No. 27,947.

L. H. BOWEN et al., *Appellants*, v. THE BOWEN-ROMER FLOUR MILLS
CORPORATION et al., *Appellees*.

(266 Pac. 65.)

SYLLABUS BY THE COURT.

CORPORATIONS —*Accounting on Dissolution*—*Assessment Against Stockholders*
—*Interest*—*Res Adjudicata*—*Statute of Limitations*—*Evidence*. In an action
for an accounting in connection with the winding up of the affairs of a cor-
poration, brought by three of the stockholders against the corporation and
the three remaining stockholders, who had charge of the business manage-
ment and affairs of the corporation, the record and evidence examined, and
*held:* (1) That there was no prejudicial error in the admission of testimony;
(2) that *res adjudicata* did not apply to any of the items of account al-
lowed by the referee and approved by the court; (3) that none of the
items so allowed were barred by the three-year statute of limitations; (4)
that the stipulation filed disposes of the question of assessment on stock and
deficiency judgment against stockholders; (5) that an agreement with a
partner to finish at his own expense the construction of a mill is not abro-
gated by transfer of the mill to a corporation; (6) that where the manager
is verbally authorized to borrow working capital, and he does so, he is en-
titled to be reimbursed for the payment of interest, at least to the extent
of six per cent; (7) that no one but the defendant, to whom the salary is
conceded to be due, can object to its being included for the sake of con-
venience in the account of another defendant.

Appeal from Pawnee district court; ROSCOE H. WILSON, judge. Opinion
filed April 7, 1928. Modified and affirmed.

*Charles Seacat,* of Independence, for the appellants.
*John C. King,* of Liberal, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by L. H. Bowen and his two
associates against The Bowen-Romer Flour Mills Corporation, R.
Romer, and his two sons for the appointment of a receiver for the
corporation, and for an accounting and sale of the property of the
corporation.

The case has been here once before, then only on the question
of the appointment of a receiver. (*Bowen v. Flour Mills Corpora-
tion*, 114 Kan. 95, 217 Pac. 301.) This time it is purely on a ques-

Accounts and Accounting, 1 C. J. pp. 639 n. 61, 644 n. 47. Agency, 2 C. J.
p. 794 n. 69. Appeal and Error, 4 C. J. p. 969 n. 56. Corporations, 14 C. J. p.
307 n. 64. Judgments, 34 C. J. p. 915 n. 55. Stipulations, 36 Cyc., p. 1291 n. 65.

41—125 KAN.

tion of accounting. The property has been sold, cost of receivership paid, and money distributed, except a fund left with the clerk of the court to await the determination of the controversies involved herein, and then to be distributed accordingly.

The accounting covers only the short period of the existence of the corporate business, from October 1, 1921, to July 19, 1922, when the receiver took charge. The six individuals named herein as parties, three as plaintiffs and three as defendants, were the stockholders. Four of them were directors. The plaintiff, L. H. Bowen, and the defendant, R. Romer, are the principal actors because they were partners in the same business immediately prior to the formation of the corporation.

The pleadings do not contain any details as to the accounts or any of the items thereof. The trial was had before a referee, who made extensive findings of fact and three conclusions of law. The court approved these findings and conclusions, with two slight modifications. The plaintiffs appeal, assigning numerous errors, and appellees have filed a cross appeal as to both the modifications made by the court and a few of the findings of the referee; so all the items of the accounting are thus before us, except a few items as to which counsel on both sides are considerate enough to say they will not press their grievances in this review. Some of the law propositions presented are *res adjudicata,* statute of limitations, assessment against stockholder, deficiency judgment against stockholder, interest on ledger balances, rate of interest to be allowed, and admission of evidence. The referee concluded as follows:

"That R. Romer should be charged with $1,379.54 on account of mill completion.

. . . . . . . . . . . . .

"Romer should not recover on the notes described in finding No. 26, but his recovery should be upon his account.

"Romer should have an opening credit in the books of the corporation in the sum of $8,295.64.

"L. H. Bowen and R. Romer should be allowed interest on ledger credit balances at the rate of eight per cent per annum."

These conclusions were approved by the court April 11, 1927, except that the rate of interest was reduced from eight per cent to six per cent, and an item of $136.67 for balance of salary earned by I. R. Romer was deducted from the amount allowed defendant R. Romer.

Appellants urge the principle of *res adjudicata* as to an item of

$6,295.64 allowed defendant R. Romer by the referee and the trial court, and that necessitates our going into the history of the former case to which reference is made. It was an accounting case brought by L. H. Bowen against R. Romer, and was decided July 14, 1924, by the same court, the same referee serving in both cases. Prior to June 11, 1921, R. Romer was the owner of an elevator and unfinished flour mill at Larned, Kan., and did a general grain business at that point. On June 11, 1921, he sold an undivided one-half interest in the real property, including lots, buildings, machinery and office equipment, to L. H. Bowen for $20,000, and executed deeds to him that day. By the terms of the agreement Romer was to complete the construction of the flour mill and each was to pay half the cost up to $3,000. Romer was to finish it at his own expense as to all cost above $6,000. Romer had a silent partner, and it was understood that it would take some little time to close out with him and to get the charter for the new company. August 1, 1921, was fixed as the probable date of commencing corporate business, with the hope that the flour mill might be finished then or soon after. Numerous efforts were made to get the new corporation started into business, but without success and without the fault of anyone in particular, as it appears.

Finally, it was agreed to launch the new corporation in business, at any rate, on October 1, 1921, and accordingly the old books were balanced and closed September 30, 1921, and the new books of the corporation opened October 1, 1921. The first entry on them of that date was the balance or difference between assets and liabilities, in the sum of $6,579.63, as a credit to the account of R. Romer. The old books closed with the same item as a balance. It will be observed that during this intervening period from June 11 to October 1 Romer considered he was just closing out his own business and that whatever business he transacted was wholly for himself until he could close out with his silent partner and get started with the new corporation; so the wheat on hand and accounts receivable, as well as the profits earned for several years and not used, were his own, and this closing entry of the old books and first entry of the new were made to represent the net assets of his own turned over to the corporation, mostly in the way of wheat inventoried as on hand October 1. Because of this delay and because it covered the best part of the year for the grain business, it was natural that Bowen should think he was entitled to some of the profits during

that time, since he owned a half interest in the buildings and equipment.

On April 8, 1922, Bowen commenced an action against Romer, alleging a partnership from June 11 to October 1, and asking for an accounting and his share of the profits. The defendant stoutly resisted the claim of partnership, but the court held it was in effect a partnership from June 27 to October 1, and appointed a referee to make an accounting. The referee and the court allowed the plaintiff Bowen one-half the profits of the business during that period of three months and three days, and rendered judgment against Romer personally—not the partnership—for the payment of such profit. The judgment also included the return to Bowen of a loan of $2,000 which Romer had carried over to the new books in favor of Bowen as for use in the business, but the court held it to be only a loan, and adjusted it in the settlement. Romer paid Bowen the judgment, covering the profits of the business, this loan, and other items. Now, because the court in the partnership accounting case adjusted the profits of that short period on the theory that it was a partnership during that time, it is claimed by appellants that this item of $6,579.63 has been adjudicated as between these parties, and this balance on the old books transferred to the new books should not be a credit to Romer; if it is such as should be credited at all, it should be to the partnership. This argument is answered by reference to the judgment in the former case. It is against Romer. He paid Bowen, not out of the partnership funds, for it had none, but out of his own resources, $2,400 for one-half the profit. The $6,579.63 on the books represented the profits and earnings of Romer for that time and longer. He closed the old books with this balance to the good, and put it on the new books when he thought he was the only one interested, but later had to arrange to pay Bowen one-half of the profits. This item of $6,579.63 was not in the old accounting in any way. Bowen didn't own any of the wheat on hand October 1. Romer did not recognize Bowen as a partner, but he was by the judgment of the court required to divide the profit with him. Romer still owned the wheat and other net assets turned over to the new corporation. The $2,000 item, credited to Bowen on the new books, having been by the court in the partnership case considered a loan to Romer which he had to pay back to Bowen, was by the referee in this case placed to the credit of Romer. This transfer does not affect either party or the new corporation. Bowen got his money

and Romer was entitled to the credit. If Bowen did not want credit for it in the new corporation and received cash for it from another party, that party paying him should step into his shoes and be allowed the same credit he had. This item the referee and court added to the $6,579.63, and, as a matter of correction in figures, reduced the item of $6,579.63 by $283.99, making it $6,295.64, which, with the $2,000, makes $8,295.64.

Appellants complain of the finding of the referee and the court in favor of appellees as to three items of expense for mill construction, in the total sum of $1,462.22. This is only a question of bookkeeping. The evidence justifies the finding that these amounts were fully provided for in the. closing of accounts and the transfer to the new books. Suppose there was a clear balance of $5,000, and it was in cash; then, because these three checks were outstanding in the total sum of $1,462.22, there would be deposited in the bank to the credit of the new company $6,462.22, and these checks could be paid when presented without exhausting any of the real credit of the corporation, leaving the clear balance still there. The accounts have covered and cared for these items.

In the same connection we will consider the complaint of the appellees, because the referee charged Romer with $1,379.54 for other items of mill construction, presented after the corporation was in charge of the business and after the mill had been considered accepted. They also urge the doctrine of *res adjudicata*, because items of mill construction were considered in the partnership accounting case, and these could have been. These items were in fact not considered in the former case, and the contract between these two men in the beginning made Romer liable for all mill construction expense over and above $6,000, and that liability would not cease because it was later owned by a corporation. We think it was the debt of Romer, and approve the finding of the referee to that effect.

The statute of limitations is urged against certain items of account that had been assembled into the form of a note payable to Romer, and upon the hearing the referee intimated he would hold the note invalid. The defendants then undertook to prove the items of account composing the note as obligations of the corporation in favor of Romer. Then it was claimed, as now, that these items were at that time more than three years old and that defendant had changed his claim from that of a note to the items back of the note, which would be changing his cause of action, and the statute would

have run against some of the items. This is not a suit on a note or on an account. It is an accounting action. No items were listed in the petition or answer. The plaintiff asserted the need of and claimed the right to an accounting. The court ordered the accounting and permitted the presentation of any and all claims for or against any of the parties to the cause in connection with the corporate business.

"Under a bill for an accounting involving mutual accounts, defendant has nothing to plead in order to get the advantage of it.

". . . In order to entitle defendant to credits for items in his favor in the accounting and a decree in his favor in case the balance of the accounting is in his favor, a cross bill is not necessary." (1 C. J. 639.)

The only application of the statute of limitations to an accounting action is with reference to the bringing of the action and the period therein requested to be covered. (1 C. J. 644.)

Both parties were by the referee and the court allowed interest on ledger balances. The larger amounts are Romer's, and appellants seriously object. The referee allowed interest to Romer on the strength of an oral conversation in which he was permitted and directed to borrow money for a working capital as needed. No rate of interest was mentioned. Later, at a directors' meeting, when such authorization was proposed to be made a matter of record, including the rate of interest, it failed to be passed. The evidence shows that Romer paid eight per cent for all he borrowed, except one loan for which he paid ten per cent for a short time. An oral authorization to borrow money for the company when it is done and the benefits accepted is sufficient to justify the return of a reasonable rate of interest—perhaps a complete reimbursement—but the court, following the rule of law that when no agreement was made as to rate it should be six per cent, reduced the rate allowed by the referee to six per cent. We do not feel justified, under the circumstances, in changing it back to eight per cent; but have no hesitancy in approving the six per cent rate as allowed by the court.

The other modification of the referee's report made by the court, we think, was based upon a reason rather technical for an accounting. It was the disallowance of the salary of I. R. Romer for nineteen days in July, before the receiver took charge, in the sum of $136.67. I. R. Romer was in court and represented by the same attorney as his father was. He made no objection to this item being credited to his father's account. This action is for an accounting

with him as well as with his father. There was no suggestion that it should be credited to him instead of his father. To avoid the multiplicity of suits it should be disposed of here. It was proved and established to the satisfaction of the referee, and the court approved of the allowance of other salaries covering the same period. It should be restored to the account of credits allowed R. Romer.

We see no merit in the suggestion that the judgment of the court may, under certain circumstances, amount to an assessment against a stockholder of a corporation and the rendering of a deficiency judgment against Bowen. In the evidence is a stipulation signed by him directing a deficiency judgment to be rendered against him if the amount he was permitted by the court to draw down from the deposit with the clerk should exceed the amount determined to belong to him on final distribution.

There are a number of other items discussed in the briefs which we have not separately mentioned, but all have been carefully considered, as have been considered the objections to the admission of testimony, and we find no prejudicial error in relation thereto.

The judgment of the trial court is affirmed in every particular except as to the item of $136.67, and is modified as to that item with directions to restore it to the list of credits of defendant R. Romer.